UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JASON JOSEPH KRON | * | CIVIL ACTION |
| VERSUS | * | NO. 2:11-cv-02263 |
| JAMES LeBLANC, ET AL. | * | JUDGE: HELEN G. BERRIGAN |
| | * | MAG. JUDGE: JOSEPH WILKINSON |

\* \* \*

## I. ORDER AND REASONS[1]

This matter is before the Court on Plaintiff Jason Joseph Kron's objections to the Magistrate's Report and Recommendation. (Rec. Doc. 68). The Court, having considered the complaint, the record, the applicable law, the Report and Recommendation of the United States Magistrate Judge, Plaintiff's Objections to the Report and Recommendation (Rec. Doc. 68; Rec. Doc. 69), and Defendants' Response to Plaintiff's Objections (Rec. Doc. 74), hereby approves the Report and Recommendation of the United States Magistrate Judge and adopts it as its opinion in this matter.

## II. BACKGROUND

The pertinent facts surrounding this matter are as follows. Plaintiff is currently incarcerated in the B.B. "Sixty" Rayburn Correctional Center ("Rayburn"). (Rec. Doc. 62, p. 1). Plaintiff testified he was incarcerated in Rayburn after being convicted of simple possession of drugs on a multiple offender bill in August 2005, and he is serving an eight year sentence and is scheduled to

---

[1]Jessica Earl, a third-year student at Tulane University Law School, assisted in the preparation of this Order and Reasons.

be released on May 2, 2013. *Id.* at 4. Plaintiff filed his complaint on September 5, 2011 against the Secretary of Louisiana Department of Corrections ("DOC") James M. LeBlanc and 21 other defendants. (Rec. Doc. 1). In his pro se complaint, Plaintiff alleges both civil rights claims and Louisiana state law tort claims arising from two incidents of allegedly excessive force against him by Rayburn officials on March 4 and March 27, 2010. (Rec. Doc. 62, p. 1).

The Court referred this matter to the Magistrate Judge for the preparation of a Report and Recommendation under 28 U.S.C. 636(b)(1)(B). On February 29, 2012, the Magistrate Judge conducted a telephone conference in the matter with Plaintiff participating pro se and Phyllis Glazer and Michael Keller as counsel for the defendants. *Id.* at 2. Plaintiff was sworn and testified for all purposes permitted by *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985). In his *Spears* testimony, Plaintiff confirmed he asserts eight kinds of claims in this matter relating to the two separate incidents: (1) excessive force, (2) failure to protect, (3) false disciplinary reports, (4) inadequate disciplinary proceedings, (5) insufficient medical care, (6) retaliation for filing ARP complaints and lawsuits, (7) failure to provide adequate outdoor exercise, and (8) violation of Plaintiff's First Amendment rights. (Rec. Doc. 62, p. 3-4). On October 10, 2012, the Magistrate issued a Report and Recommendation in which he stated that some of Plaintiff's claims should be dismissed with prejudice, but those relating to the March 27, 2010 incident, including the excessive force and failure to protect claims, required further proceedings. The Plaintiff has filed long and verbose formal objections to the Magistrate Judge's Report and Recommendation, and though he does not make any new arguments or raise specific objections other than to generally reassert the validity of his claims, each objection will be individually addressed by the Court. (Rec. Doc. 68).

## III. LEGAL ANALYSIS

### A.  Legal Standard for a pro se Complaint

Rule 8(a) of the Federal Rules of Civil Procedure requires a plaintiff to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a).  The purpose of this pleading requirement is to put a defendant on notice of the claim and to allow for an adequate response. Wright & Miller, Federal Practice & Procedure: Civil 2d § 1202.  In addition to the unexacting requirements of federal notice pleading, there is a tradition of leniency in this circuit toward pro se litigants. *Spotville v. Cain*, 149 F.3d 374, 377 (5th Cir.1998).  A pro se complaint should not be dismissed unless it appears that the plaintiff can prove no set of facts which would entitle him to relief. *Moawad v. Childs*, 673 F.2d 850, 851 (5th Cir.1982).  Conducting a *Spears* hearing helps clear up any conclusional allegations of a pro se complaint and ascertain exactly what the prisoner alleges occurred and the legal basis of the claims. *Spears*, 766 F.2d at 180.  After a *Spears* hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law. *Mahogany v. Muwwakkil*, 259 F. Appx. 681, 682 (5th Cir. 2007) (citing *Neitzke v. Williams*, 490 U.S. 319, 325 (1989)).  A prisoner's in forma pauperis claims may be dismissed under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1) as frivolous because they lack an arguable basis in law or under Rule 12(b)(6) in light of *Spears* testimony explaining the factual basis of his claims. (Rec. Doc. 62, p. 25); *Neitzke*, 490 U.S. at 325.

### B. Standard of Review for a Magistrate Judge's Order

A district court evaluating a Magistrate Judge's order with respect to a matter not dispositive of a claim or defense may adopt the Magistrate Judge's findings and conclusions as long as the factual and legal bases supporting the ruling are not clearly erroneous or contrary to law. *See* 28

-3-

U.S.C. § 636(b)(1)(A); Fed.R.Civ.P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 149, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). A district judge, after considering any objections by the parties, may accept, set aside, or modify, in whole or in part, the findings and recommendations of the Magistrate Judge with regard to such matters. *See* Fed.R.Civ.P. 72(a); *see also DeLuca v. Lord*, 858 F.Supp. 1330, 1345 (S.D.N.Y.1994). This Court accepts the Magistrate's findings in his Report and Recommendation, and merely attempts to clarify in this Order any further misunderstanding or confusion Plaintiff may still have.

**C.  Plaintiff claims Magistrate erred in finding his March 4, 2010 Excessive Force Claim was time barred.**

First, Plaintiff objects to the Magistrate's finding that his claim of excessive force against Defendants Seal and Alford relating the March 4, 2010 incident was time barred. (Rec. Doc. 68, p. 12-18). In his Report and Recommendation, the Magistrate Judge explained that although Section 1983 has no statute of limitations, the Louisiana prescription statute, Louisiana Civil Code article 3492 applies to suits brought in federal court under Section 1983, and it provides for a prescriptive period of one year from the date of injury or damage. (Rec. Doc. 62, p. 25-26). In the pro se prisoner context, the "mailbox rule" applies, and the date the prison officials receive the complaint from the prisoner for delivery to the court is considered the time of filing for statute of limitations purposes. *Id.* at 28; *United States v. Petty*, 530 F.3d 361, 363 n.1 (5th Cir. 2008). In addition to applying the one year statute of limitations, federal courts give effect to any applicable tolling provisions provided by state law. *Lopez-Vences v. Payne*, 74 Fed. Appx. 398, 2003 WL 22047325 (5th Cir. 2003). The running of prescription in Louisiana may be suspended or tolled for equitable reasons. (Rec. Doc. 62, p. 28). Here, the Plaintiff had to exhaust all his available administrative remedy procedures ("ARP") before filing suit. *Id.* at 30; 42 U.S.C. § 1997e(a). The court must then

consider the time during which the prisoner's ARP was pending within the prison system when calculating the running of limitations period. (Rec. Doc. 62, p. 30). A properly filed ARP grievance tolls the running of the one-year limitations period for a prisoner's claim. *Madis v. Edwards*, 347 F. Appx. 106, 108 (5th Cir. 2009).

In his Report and Recommendation, the Magistrate Judge found that the Plaintiff had properly filed all his ARP proceedings, which suspended the tolling period to render his current complaint timely as to all claims except the excessive force claim relating to the incident on March 4, 2010. (Rec. Doc. 62, p. 31).  As to the March 4 excessive force claims against Defendants Seal and Alford, the one-year prescriptive period was tolled from March 8-July 21, 2010 while the relevant ARP was pending. *Id.* at 32.  Prescription began to run anew after termination of all ARP proceedings, and Plaintiff then had until July 21, 2011 to file his claims. *Id.* Plaintiff did not file his claim in this court until August 26, 2011. *Id.* Plaintiff contends that the actual date he signed and dated his § 1983 complaint was August 18, 2011 when he handed his documents to Rayburn officials for processing. (Rec. Doc. 68, p. 13).  Plaintiff acknowledges the August 18 date is still past the July 21, 2011 date required to file within the prescriptive period. *Id.*  In his opposition, however, Plaintiff argues that he filed a request asking the Court to grant him a 60 day extension in order to resubmit his March 4 excessive force claims against Alford and Seal. *Id*. at 16.  This 60 day extension request was never ordered by the Court, and it requires further explanation.

Plaintiff had previously filed another complaint in this Court in February 2010 also against Rayburn officials, but the complaint was concerning an unrelated matter. *Id.* at 14.  The February

2010 claim was assigned within this Court to Section F.[2] *Id.*   After filing the February 2010 complaint, Plaintiff later attempted to include his March 4, 2010 excessive force claims against Alford and Seal as part of his February 2010 complaint, but Section F and the Magistrate Judge informed the Plaintiff he must exhaust his state administrative remedies before proceeding against the Defendants in federal court.  *Id.* at 15.  As a result, Plaintiff's excessive force complaints against Alford and Seal were dismissed without prejudice, in order to allow Plaintiff to continue at the state administrative level. *Id.*

In his opposition, Plaintiff contends that after his ARP against Alford and Seal had terminated, he filed his request for a 60-day extension on his federal claims in the same section as his previous complaint, Section F. *Id.* at 16.  Plaintiff alleges he filed this request on June 23, 2011, within the statute of limitations period, and it was rendered for filing by the Clerk of Court on June 24, 2011. *Id*; (Rec. Doc. 68-1, p. 21-22). Though received by the Court, the extension-request was never processed further, neither as part of the February 2010 complaint filed before Section F nor in the present complaint before Section C. (Rec. Doc. 68, p. 17).  Plaintiff alleges that had his 60-day extension been granted, he would have been within the statute of limitations with regards to his March 4 excessive force claims.  *Id.* at 17.  Plaintiff contends that he exercised due diligence with regards to the limitations period by asking for an extension period. *Id.*

In his Report and Recommendation, the Magistrate Judge explained that because Plaintiff had voluntarily dismissed his complaints against Defendants Alford and Seal in the previous

---

[2] For the Plaintiff's further understanding, Section F is Judge Martin Feldman's section within this Court. Plaintiff referred to Section F in his opposition to the Magistrate's Report and Recommendation as "his first complaint in front of Judge Martin L.C. Feldman and Magistrate Judge Daniel E. Knowles." (Rec. Doc. 68, p. 14).

complaint before Section F, it placed Plaintiff in the same position he would have been in if he had never brought the first suit at all. (Rec. Doc. 62, p. 34). As a result, in regards to Plaintiff's March 4 excessive claims, the dismissal without prejudice did not "keep" Plaintiff's claims against Alford and Seal with his original complaint, and it did not suspend the tolling period for any extra period of time.  It was as if Plaintiff had *never filed* any complaint against Alford and Seal. In his lengthy opposition, Plaintiff does not mention this point of law, and we discuss it further here to clarify any misunderstanding the Plaintiff may have.

Under Article III of the Constitution, the judicial power of the federal courts is limited to "cases" or "controversies." *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 395 (1980). Thus, the exercise of federal jurisdiction under the Constitution "depends on the existence of a case or controversy, and a federal court lacks the power to render advisory opinions." *United States Nat'l Bank v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 446 (1993). In this case, because Plaintiff voluntarily dismissed his claims against Alford and Seal to pursue his ARP claims, there technically never existed any 'case or controversy' against Alford or Seal to be heard in this Court. Plaintiff's motion for a 60 day extension that he intended to send to Section F only requested additional time for claims which, at that point in time, no longer existed. (Rec. Doc. 68-1, p. 21-22).  Therefore, the request was not construed by the Court as a new petition because it did not state any ground for relief nor factual basis for each ground for relief, but merely indicated that the Plaintiff wished to "resubmit his claims" against Alford and Seal. *Id.*  Plaintiff merely indicated that this pleading was for further instructions on how to resubmit his complaint in Section F. *Id.*  The case was never filed into the record of Plaintiff's February 2010 complaint because the February 2010 complaint had been fully terminated nearly ten months prior to the request for 60 day extension. *See* CA No. 10-

518, Rec. Doc. 40. Plaintiff's February 2010 case was dismissed, resolved, and terminated long before Plaintiff requested more time for the March 4 excessive force complaints, so there was no longer any active case or controversy for Section F to even consider. *See United States v. Marano*, 3:00CR250(01)G, 2002 WL 449571 (N.D. Tex. Mar. 20, 2002).

What Plaintiff must understand is that when he filed his request for more time before Section F, his February 2010 case no longer existed, and his claims against Alford and Seal had been dismissed along with the February 2010 case. As a result, when Plaintiff filed the current complaint which included the March 4 excessive force claims, it was as if these March 4 claims were being brought before the Court for the very first time. Legally, the only tolling that applied to the March 4 excessive force claims was time the March 4 claim was in ARP proceedings, regardless of whether Plaintiff was trying to be diligent in requesting more time with Section F.

**D.  Plaintiff claims Magistrate erred in denying his claims against Defendants LeBlanc, Tanner, and Bickham for Failure to Protect from Harm**

In his second opposition, Plaintiff objects to the Magistrate Judge's finding that his claims against Defendants Tanner, Bickham, and LeBlanc for failure to protect should be dismissed because the acts by the Defendants did not establish a constitutional violation. (Rec. Doc. 68, p. 18); (Rec. Doc. 62, p. 41). In his opposition, Plaintiff argues that Warden Tanner, Assistant Warden Bickham, and Secretary LeBlanc, while not actually participating in any excessive force, were well-aware of the situation involving prison guards Alford and Seal whom Plaintiff alleges had a known history of using excessive force against prisoners at Rayburn. (Rec. Doc. 68, p. 19).

In his Report and Recommendation, the Magistrate Judge explained that prison officials can be held liable for the constitutional violation for failure to protect an inmate only when the officials are shown to have been deliberately indifferent to a substantial risk of serious harm. *Farmer v.*

-8-

*Brennan*, 511 U.S. 825, 832-33 (1994); (Rec. Doc. 62, p. 38).  As the Magistrate explained, a "deliberate indifference" to prisoner safety is a very high standard for an inmate to prove. *Id.* A deliberate indifference to an inmate's safety is described as "an unnecessary or wanton infliction of pain or acts repugnant to the conscience of mankind." *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976).  Further, the plaintiff must establish that a prison official has a culpable state of mind. (Rec. Doc. 62, p. 39).

The Plaintiff concedes he must prove Tanner, Bickham, and LeBlanc had a culpable state of mind, but he argues that he does not need to show that the prison official acted believing harm would befall the inmate, but that showing the official failed to act despite his knowledge of a risk is enough. (Rec. Doc. 68, p. 21).  In this Circuit, however, "mere negligence or a failure to act reasonably" is not enough to fulfill the "deliberate indifference" requirement. *Mace v. City of Palestine*, 333 F.3d 621, 626 (5th Cir. 2003).  Merely because Tanner, Bickham, and LeBlanc may have failed to act in regards to the alleged history of excessive force by Alford and Seal against inmates, does not fulfill the requirement that the three prison-officials must have had a subjective *intent to cause harm* to any inmate. *Id*; *see also Bd of County Comm'rs v. Brown*, 520 U.S. 397, 410 (1997) (the Supreme Court of the United States reaffirming that proving "deliberate indifference" is a very high standard for a plaintiff to prove).  In this jurisdiction, just because Tanner, Bickham, and LeBlanc failed to discharge or punish defendants Alford and Seal, as Plaintiff believes the three Defendants should have, it is not enough to prove that they themselves had culpable intent to harm inmates. Their failure to act, alone, is not sufficient proof.

**E. Plaintiff claims Magistrate erred in denying his Inadequate Medical Care Claims**

In his third opposition, Plaintiff objects to the Magistrate's finding that his claims against defendants Laravia, Carter, Forbes, and Olivera for inadequate medical care should be dismissed for failure to state a claim of a violation of his constitutional right to proper medical care. (Rec. Doc. 68, p. 30-52).  In his opposition, Plaintiff has written nearly 23 pages citing various case law, in which he attempts to prove that the four named Defendants were deliberately indifferent to his medical needs and therefore violated the constitution. *Id.* In his Report and Recommendation, the Magistrate Judge again explained to the Plaintiff that proving deliberate indifference to medical care is a very strict standard to prove, and based on the Plaintiff's own allegations, none of the four Defendants were ever completely indifferent to the Plaintiff's needs. (Rec. Doc. 62, p. 44-45).  In fact, according to Plaintiff's testimony, on various occasions the Plaintiff was provided with some form of health care following the alleged excessive force incidents. *Id.*

In his opposition, Plaintiff attempts to show that his open laceration, his bruises, and his pain were not adequately treated by the Defendants. *See generally* Rec. Doc. 68, p. 34-40.  He compares his injuries to inmates in various other cases, but what Plaintiff fails to prove is that his injuries were serious enough or that any of the four Defendants were *deliberately* indifferent to his injuries. In fact, for example, even medical care provided to inmates with much more serious injuries that results in an inmate death may *still not* constitute deliberate indifference on the part of the prison medical staff. (Rec. Doc. 62, p. 46, citing *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999)).  Plaintiff's injuries did not result in any situation close to death, nor did they result in any sort of permanent impairment or loss that is discernable based on his testimony.  While this Court does not deny that Plaintiff may have been in pain following the alleged excessive force on March 4 and March 27, the Plaintiff's "los[s] of sleep for two days, and . . . suffer[ing] with physical and mental pains for over

10 days" are simply not enough to prove that the care the Defendants gave to the Plaintiff constitutes deliberate indifference to Plaintiff's pain. (Rec. Doc. 68, p. 33). Plaintiff himself cites a case in which the inmate successfully proved the medical staff of the prison was deliberately indifferent to his medical needs when they failed to provide the inmate with even the most "rudimentary aid". *Smith v. Dooley*, 591 F. Supp.1157, 1170 (W.D. La. 1984). Unlike the inmate in that case, to whom Plaintiff attempts to compare his situation, Plaintiff in this case himself says that he received pain pills, and bandages, along with other medical treatment, all of which is far from failing to administer any basic aid. Merely because Plaintiff was unhappy with the pain medication and bandages he received after the incidents does not indicate that any of the medical staff was acting in a way so "repugnant to the conscience of mankind." *Estelle*, 429 U.S. at 105-06.

### F. Plaintiff claims Magistrate erred in denying his Inadequate Outdoor Exercise Claim

In his fourth opposition, Plaintiff objects to the Magistrate Judge's finding that his claims that Defendants denied him adequate outdoor exercise should be dismissed for failure to state a claim. (Rec. Doc. 68, p. 52). Plaintiff claims he is currently required to participate in outdoor exercise while in handcuffs or some other restraint, and the Defendants have no right to restrain the Plaintiff or deny the Plaintiff his "life's necessity of exercise, nor his needed treatment to be able to walk daily." *Id.* at 53. What Plaintiff fails to mention in his opposition is that he is currently required to wear restraints during his outdoor exercise for security reasons, as Plaintiff had previously committed numerous other violations of prison rules. (Rec. Doc. 62, p. 50). Further, Plaintiff fails to explain how his current outdoor exercise time, even though restrained, has caused him any serious medical hazard. (Rec. Doc. 62, p. 52). Plaintiff alleges that being restrained while outside has prohibited him from any exercise for his "prescribed medical treatment to walk every

day." *Id.* at 56.  Plaintiff fails to prove that, even though restrained for his own rule-breaking, he is somehow unable to move at all or to walk around lightly in his restricted area, in order to comply with his doctor's orders to quit smoking and to increase exercise and walking. (Rec. Doc. 68, p. 53-54).  Plaintiff claims the prison is committing cruel and unusual punishment and "reckless denial" of Plaintiff's life necessities by restraining him during his outdoor time. *Id.* at 59.  Though restrained-exercise is not ideal, this Court fails to see how restricted-outdoor time due to Plaintiff's own rule-breaking somehow rises to the very high standard of proving cruel and unusual punishment. While Plaintiff may not be able to exercise the full extent he would like, he has failed to prove that this lessened-amount of exercise has caused him any serious health hazard. (Rec. Doc. 62, p. 52).

The Court understands that restraining Plaintiff during outdoor exercise for four weeks may be, in Plaintiff's opinion, an extreme form of punishment.  The Court reminds the Plaintiff, however, that maintenance of prison discipline and security gives prison officials a broad discretion in how they choose to administer discipline. (Rec. Doc. 62, p. 50); *Waganfeald v. Gusman*, 674 F.3d 475, 485 (5th Cir. 2012).  The Court further reminds the Plaintiff that, like his claims for failure to protect and inadequate medical care, a claim of inadequate outdoor exercise as a constitutional violation is also a very high standard to prove.  Plaintiff cannot merely "guess" that the restrained exercise is somehow causing him serious harm, but must actually prove it, which he fails to do in his complaint and in his opposition to the Magistrate's Report and Recommendation.

Plaintiff further objects to the Magistrate Judge's finding that Defendant Smith be dismissed from the claim of inadequate exercise. (Rec. Doc. 68, p. 60); (Rec. Doc. 62, p. 53-54). Plaintiff asserts that he already brought a claim against Smith in his original complaint, which he later voluntarily dismissed, and he does not seek to add Smith to the outdoor exercise claim. (Rec. Doc.

68, p. 60); *see also*, Plaintiff's original complaint (Rec. Doc. 1-7, p. 24-25). Plaintiff claims in his opposition that he has instead requested permission to amend his complaint again in order to "reassert his remaining claims against remaining defendants with more clarity and properness so he can [e]liminate any and all misunderstandings and confusions." (Rec. Doc. 68, p. 60).  For the reasons stated above, Plaintiff may not add Smith to any exercise claim for to do so would be futile, as the Court is dismissing all inadequate outdoor exercise claims.

Further, the Court will not grant Plaintiff permission to amend his complaint. Plaintiff has submitted a complaint covering over 318 pages, an opposition with exhibits covering over 90 pages, along with several other submissions.  The Court must remind the Plaintiff that under Rule 8(a) of the Federal Rules of Civil Procedure complaints must be "short and plain statement[s]." Fed. R. Civ. P. 8(a). Plaintiff has gone way beyond the rule requiring a short statement of his claims, and has instead, as the Magistrate stated, chosen to submit "voluminous, verbose, repetitive" pleading "filled with extraneous material". (Rec. Doc. 62, p. 3).  Further, throughout the proceedings, Plaintiff has never brought any new claims or factual allegations in any of his amended complaints or oppositions, but rather, he has merely repeated his previous claims and cited different case law each time.  The Court, therefore, DENIES any request for permission to amend Plaintiff's complaint, including denial to include Defendant Smith in any claims other than her inclusion in the failure to protect claims.

### G. Plaintiff claims Magistrate erred in denying his First Amendment Violation Claim

Finally, in his fifth opposition, Plaintiff objects to the Magistrate Judge's finding that his claims against Defendants Tanner, Bickham and Kelly for intentionally denying Plaintiff his First Amendment rights should be dismissed for failure to state a claim. (Rec. Doc. 62, p. 59-63).  In his

opposition, Plaintiff argues that the Defendants violated his First Amendment right to be heard because they intentionally denied Plaintiff the right to receive relief on his ARP complaints by rejecting some of his ARP complaints for "insufficient reasons." (Rec. Doc. 68, p. 63). In his second amended complaint, Plaintiff claims that Defendants rejected some of these ARP complaints because "they were repetitive" to other ARP grievances. (Rec. Doc. 37, p. 4). Prisoners do have a First Amendment right of meaningful access to the courts. *Dickinson v. TX, Fort Bend County*, 325 F. Appx. 389, 390 (5th Cir. 2009). However, Plaintiff must prove that his position as a litigant was actually prejudiced. *Lewis v. Casey*, 518 U.S. 343, 352-53 (1996). As the Magistrate Judge noted in his Report and Recommendation, Plaintiff has failed to prove he was prejudiced in his ARP proceedings. (Rec. Doc. 62, p. 62). Allegations that Plaintiff was prevented from bringing ARP claims because prison officials wanted to "cover up" unlawful behavior, without any proof, is not sufficient to indicate Plaintiff was somehow prejudiced. Rather, Plaintiff's numerous ARP grievances were denied for being repetitive. *Id*. According to Plaintiff's own testimony, he was given a written statement notifying him of any charges against him; he received hearings before the disciplinary board; he has been provided with and has had the ability to prepare and transmit his own legal documents; he has had disciplinary ARP hearings for his grievances; he has had the ability to file complaints, including overly voluminous submissions in front of the Magistrate, as well as this Court; and he has been granted further proceedings on his non-frivolous claims. (Rec. Doc. 62, p. 58, 62). Plaintiff's complaints have been the subject of ARP proceedings, the Magistrate Judge's Report and Recommendation, and now this Court's full evaluation. For all these reasons, no actual prejudice in violation of the First Amendment has occurred in regards to Plaintiff's access or ability to be heard in court.

-14-

### III. CONCLUSION

Accordingly,

The Court hereby approves the Report and Recommendation of the United States Magistrate Judge and adopts it as its opinion in this matter. Therefore,

**IT IS ORDERED** that Plaintiff's complaint is hereby partially **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under Fed. R. Civ. P. 12(b)(6), 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1), as applicable, as to defendants Sergeant David Alford and Lieutenant Ronnie Seal as to Plaintiff's claims of excessive force arising out of the March 4, 2010 incident due to the passing of the statute of limitations.

**IT IS FURTHER ORDERED** that Plaintiff's complaint is hereby partially **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under Fed. R. Civ. P. 12(b)(6), 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1), as applicable, as to Defendants James LeBlanc, Steve Rader, Robert C. Tanner, Keith Bickham, Michael Harrell, Darryl Mizell, Dr. Dennis Laravia, Bessie Carter, John Tullas, Ellis Simon, and Bruce Forbes, and as to all claims concerning false disciplinary reports, inadequate proceedings, outdoor exercise, medical care, ARP proceedings, investigation and/or First Amendment claims, and as to Tanner, Bickham, and LeBlanc for failure to protect claims.

**IT IS FURTHER ORDERED** that Plaintiff's request for permission to further amend his complaint is **DENIED** for reasons stated above.

**IT IS FURTHER ORDERED** that this matter be REFERRED back to the Magistrate Judge for further proceedings to be conducted as to remaining claims (1) Section 1983 excessive force and related state law tort claims against defendants Alford and Price concerning the March 27, 2010 incident

-15-

and (2) Section 1983 failure to protect and related state law tort claims against defendants Smith,

Todd, Olivera, and Weary for failure to protect Plaintiff's health and safety. Rec. Doc. 62, p. 63.

New Orleans, Louisiana, this 6th day of March, 2013.


**HELEN G. BERRIGAN**
**UNITED STATES DISTRICT JUDGE**